United States District Court
Southern District of Texas
**ENTERED**
January 21, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALLIED FITTING LP, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-3447 |
| | § | |
| STEPTOE & JOHNSON LLP | § | |
| and | § | |
| THOMAS J. TRENDL | § | |
| and | § | |
| GREGORY S. MCCUE, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM AND ORDER</u>

Before the Court is the defendants', Steptoe & Johnson, LLP, and Thomas J. Trendl, motion to dismiss the plaintiff's, Allied Fitting, LP, suit pursuant to Federal Rules of Civil Procedure, Rule 12(b)(2) [DE 8]. Also, before the Court is the plaintiff's response [DE 14], and the parties' exhibits and pleadings, all of which the Court has examined for purposes of addressing the defendants' motion.

## II.   BACKGROUND

The defendants' motion to dismiss is based on the claim that this Court lacks personal jurisdiction[1] over the defendants because the plaintiff cannot establish the requisite "minimum contacts" with Texas such that the defendants could have anticipated being sued in Texas. *See* Fed. R. Civ. P., Rule 12(b)(2). ); *see also*

---

[1] Although the defendants' motion addresses both personal and general jurisdiction, the plaintiff seeks to establish only personal jurisdiction. Therefore, the Court addresses only the issue of personal jurisdiction.

*Wien Air Alaska, Inc., v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).  This finding is necessary for a Court to exercise personal jurisdiction over a defendant, otherwise, the exercise offends "traditional motions of fair play and substantial justice."  *See Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014).

The plaintiff asserts legal malpractice as the bases for its suit, contending that the defendants engaged in professional negligence, breach of contract and breach of fiduciary duty.  The plaintiff advertises that it is a "worldwide leader in the manufacture and distribution of critical application fittings, flanges, valves, pipe and related industry parts."  Many of the plaintiff's products are made outside the United States and are imported into the Country.  As a result, the plaintiff is required to comply with regulations and processes that apply to imported goods. The United States Department of Commerce and United States Customs and Border Protection are charged with overseeing imported goods and insuring compliance with federal statues and regulations.

Among the duties that the federal agencies are charged with enforcing, are statutes and regulations against United States companies that seek to gain unfair trade advantage when a foreign company or government artificially lowers its price for a product, or subsidizes a product in order to gain an unfair advantage in the market.  To avoid being out of compliance and/or guard against a domestic

competitor engaging in unsavory conduct, companies, like the plaintiff, employ the services of international law firms who offer expert services in the area.

On or about July 9, 2016, a partner in the defendant law firm solicited work from the plaintiff, offering to provide assistance regarding a recently filed "anti-dumping and countervailing investigation" on certain steel flanges from India, Italy and Spain.  Over a period of several weeks, the plaintiff and defendants reached an agreement and entered into a contract for services that included "trade advice and analysis on antidumping matters."

In August 2016, an employee in the defendant firm traveled to Texas, met with the plaintiff, primarily concerning its operations in Italy.  Risks and exposure were the main topics discussed and the services provided were invoiced and paid. The contractual relationship continued until May 2017, when the plaintiff became the subject of an inquiry filed by domestic competitors who claimed foul against the plaintiff concerning carbon steel butt-weld pipe fittings from China.  The defendants successfully defended the plaintiff and the plaintiff received a refund of some $9 million of the $15 million that it had deposited pursuant to federal regulations.  The plaintiff did not receive the $6 million that was being held by Customs at the time.

The inquiry concerning the steel-butt weld pipe fittings that the plaintiff acquired from Pantech Steel Industries, a Malaysian company, required the

plaintiff to deposit $6 million of the $15 million with Customs.  After the plaintiff received refunds of $9 million, it inquired of the defendant whether the remainder of $6 million would be forthcoming only to learn that the period for seeking a refund had passed.

## III.   CONTENTIONS OF THE PARTIES

### A.   *The Plaintiff's Contentions*

The plaintiff contends that starting in 2018, the defendant counseled with it on the Pantech/Malaysian matter.  The inquiry, was opened as a new matter in December of 2017, but lay dormant until the China inquiry was resolved.  When the China inquiry heated up in 2018, the defendant invoiced for those services as well as for the Pantech/Malaysian inquiry.  This service and invoice trend continued into 2020.

The plaintiff asserts that at no time during the exchange of emails, billings, phone calls or face-to-face meetings in Texas did the defendant advise the plaintiff regarding the deadline by which a request for the $6 million deposit with Custom must be made.  The plaintiff asserts that the number of contacts, visits to Texas and the engagement are sufficient contacts for the Court to assert specific personal jurisdiction over the defendants.

### B.     *The Defendants' Contentions*

The defendants contend that the plaintiff's lawsuit should be dismissed, pursuant to FRCP 12(b)(2), because:   (a) the plaintiff cannot show that the defendants purposefully availed themselves of the benefits of Texas law; alternatively, to exercise personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice"; (b) the defendants have not had sufficient minimum contact with Texas for the Court to exercise general jurisdiction over the defendants, *i.e.,* no "continuous and systematic" contacts[2]; and, (c) as it concerns specific jurisdiction, the plaintiff cannot show that the dispute is related to Texas as all activities were performed in Washington, D.C. Hence, the defendants conclude, the mere existence of an engagement letter is insufficient to subject a nonresident to forum jurisdiction.  Moreover, in light of the fact that the engagement letter includes a choice-of-law and jurisdiction clause regarding contractual disputes, dismissal is, moreso, appropriate.

## IV.    ANALYSIS AND DISCUSSION

The Court is of the opinion that it lacks personal jurisdiction over the defendants.  Therefore, the case should be dismissed pursuant to Fed. R. Civ. P., Rule 12(b)(2).  Barring a rule or statutory basis for the exercise of jurisdiction over a defendant, a federal court may dismiss a defendant who is not, otherwise, subject

---

[2] The Court does not address general jurisdiction because the plaintiff has not asserted jurisdiction on that basis.

to the Court's jurisdiction.  *Id.*  In those instances where a Court determines that sufficient contacts with the forum state exists, and that it may exercise jurisdiction, a court must determine whether the exercise of jurisdiction violates the "due process" clause of the Fourteenth Amendment to the federal Constitution.

The burden rests on the plaintiff, first to establish that the defendants' contacts with Texas constitute "minimum contacts", *i.e.,* that the defendants have purposefully received benefits and protections of the State; and next, whether the exercise of jurisdiction "offend(s) traditional notions of fair play and substantial justice."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010).

### A.    *The Plaintiff's Restatement*

The plaintiff asserts that its proffers satisfies its minimum contact – purposeful availment burden.  The plaintiff points to proffered exhibits A, A-1 through A-17 and Exhibit B.  These exhibits include a description of the nature of the plaintiff's business and products; an email solicitation by the defendants offering legal and other professional services, and an offer to meet with plaintiff in Houston, Texas; a scope of work document; itemized invoices for services rendered starting in 2016-17, including an analysis of risk and exposure from a potential anti-dumping and countervailing duty petition;  evidence of communications between the parties regarding the Department of Commerce

determination; an email instructing the defendant to open a new account specifically regarding the Pantech/Malaysian matter; and, notice of the Department of Commerce's preliminary determination.

In addition the plaintiff points to frequent and consistent telephone and email contacts with the plaintiff in Texas and two, in-person, visits by a non-lawyer employed by the defendant law firm to the plaintiff's Houston offices where, on at least one occasion the Pantech/Malaysian anti-circumvent matter was discussed.

Further proof of the defendants' numerous engagements in the matter, asserts the plaintiff, is reflected in the defendants' numerous invoices to the plaintiff that have been paid.  At least three-fifth (3/5) of the defendants' invoices involved the Pantech/Malaysian matter.   All said, the plaintiff asserts that the defendant, its agent(s) and employee(s) consistently corresponded with the plaintiff in Texas and, therefore, Texas is the site of its inquiry.

### B.    *The Defendants' Rejoinder*

The defendants do not deny that the activities described by the plaintiff occurred.  Instead, they deny that the activities establish a sufficient nexus of the type contemplated by law that permits subjecting a non-resident defendant, such as the defendants, to the jurisdiction in Texas.  In this regard, the defendants point out that:  (a) the dispute between the parties was borne out matters that arose in and were handled in Washington, D.C.; (b) the defendants did no work concerning the

engagement in Texas; and, (c) all of the work, out of which the dispute arises, occurred in Washington, D.C.

In addition, the defendant points to the language in the engagement letter which addresses the enforcement of its terms. Specifically, the "Choice of Law/Jurisdiction" portion of the letter states that its terms ". . . shall be governed by, construed in accordance with, and enforced pursuant to the laws of the District of Columbia . . .. The client consents to the jurisdiction of the District of Columbia . . ."

## V.     CONCLUSION

The evidence is undisputed that the defendant did not perform any of the terms of the contract in Texas. Aside from two meetings that focused, as best the Court can tell, on updates and the progress of matters pending in Washington, there were no contacts with Texas. Contracting to render a service outside the forum state does not constitute the necessary contact. *See Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). The same is true for written and telephone communications. Engaging in email and telephone communications, even providing in-person updates on the status of the parties' engagements, do not meet the minimum contacts standard necessary for this Court to exercise personal jurisdiction over the defendants. *See Trinity Indus., Inc., v. Myers & Assocs., Ltd.,*

451 F.3d 229, 238 (5th Cir. 1995).  The plaintiff's proof fails to establish minimum contact.

The Court is also of the opinion that it is constrained by the Choice of Law/Jurisdiction clause in the engagement.  It unequivocally states . . . "[T]he Client consents to the jurisdiction of the District of Columbia . . . The strength of the clause is beyond simple peroration.  It clearly states that the plaintiff consents to the jurisdiction of the District of Columbia.

Finally, the Court determines that the plaintiff's suit does not arise or relate to activities that the defendant purposefully directed at Texas.  In fact, the injuries that the plaintiff claim arose out of or relate to activities that occurred, or failed to occur, in Washington, D.C. *See Clemons v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010).  Nexus is established by the activities that a non-resident engages in or performed in the forum state.  *Id.* at 379.

Based on the foregoing analysis and discussion, the Court determines that the defendants' motion to dismiss should be granted.

It is so Ordered.

SIGNED on this 21st day of January, 2021.

_____
Kenneth M. Hoyt
United States District Judge